UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DORIAN MONTALVO, GILBERTO PAMIAS,
GIOVANNE PAGAN, and LEONARD CRISCI III,

                         Plaintiffs,                    **COMPLAINT**

         -against-                  **COLLECTIVE ACTION**
                                                **UNDER 29 U.S.C. § 216(b)**

ARKAR INC., SEWARD 2025 LLC, ARI
HABERBERG and GILI HABERBERG,

                        Defendants.
------------------------------------------------------------X

       Plaintiffs DORIAN MONTALVO ("Montalvo"), GILBERTO PAMIAS ("Pamias"), GIOVANNE PAGAN ("Pagan"), and LEONARD CRISCI III ("Crisci"), upon personal knowledge as to themselves and upon information and belief as to other matters, by their attorneys, RAPAPORT LAW FIRM, PLLC, as and for their Complaint, allege as follows:

## NATURE OF ACTION

       1.     Plaintiffs bring this action seeking unpaid wages, including unpaid overtime compensation and interest thereon, reimbursement for unlawful deductions, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

       2.     This action further invokes diversity jurisdiction and the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (e.g., New York Wage Payment Act; NY Labor Law §§ 191, 193, 195, and 12 N.Y.C.R.R. Part 141-1.9, 2.10, Part 142, and NY Labor Law § 215).

3. Defendants operate as a unified and centrally-controlled real estate enterprise that, during the periods of time applicable to the causes of action herein, owns, operates and/or controls at least sixteen (16) rental apartment buildings in the New York City.

4. Plaintiffs are former employees of Defendants Arkar Inc. ("Arkar"), Seward 2025 LLC ("Seward 2025"), Ari Haberberg, and Gili Haberberg (collectively, "Defendants"), all having performed maintenance work at a 179-unit apartment building located at 2025 Seward Avenue, Bronx, NY (the "Seward Ave Building").

5. Defendants owned, operated and/or controlled the Seward Ave Building until on or about May 19, 2017, and they had the status of Plaintiffs' employers.

6. Defendants had policies of encouraging and/or requiring Plaintiffs to work in excess of forty (40) hours per week without paying them overtime compensation as required by the FLSA and NYLL.

7. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

8. Publicly and in their business dealings, Defendants utilize the trade name "Arkar" to identify and publicize their real estate enterprise, and they form and wholly control constituent/affiliate limited liability companies to nominally hold title to the enterprise's buildings.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to the provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., including under 29 U.S.C. §§ 207, 216, and 217. This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331)

(federal question), and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367(a).

10. Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process. Defendants operate facilities and employed Plaintiffs in this judicial district.

11. This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Fed.R.Civ.P. 4(h)(1).

## THE PARTIES

*Plaintiffs: Dorian Montalvo, Gilberto Pamias, Giovanne Pagan, and Leonard Crisci III:*

12. Plaintiff Dorian Montalvo is an adult, natural person who resides in the City of New York, County of Bronx, and State of New York, who performed maintenance work for Defendants as Superintendent of the Seward Ave Building from in or about April 2015 until Defendants sold the Seward Ave Building on or about May 19, 2017.

13. Plaintiff Gilberto Pamias is an adult, natural person who resides in the City of New York, County of Bronx and State of New York, and he worked for Defendants as a Porter at the Seward Ave Building from in or about May 2015, until on or about May 17, 2017.

14. Plaintiff Giovanne Pagan is an adult natural person who resides in the City of New York, County of Bronx and State of New York, and he worked for Defendants as a

Porter at the Seward Ave Building from in or about June 2015 until on or about May 17, 2017.

15. Plaintiff Leonard Crisci III is an adult natural person who resides in the City of New York, County of Bronx, and State of New York, and he worked for Defendants as a Porter at the Seward Ave Building from in or about May 2015 until on or about May 17, 2017.

*Defendants:*

16. Defendants operate and directly and/or indirectly own and control at least 16 multiple family apartment buildings in New York City.

17. Defendants and their constituent title-holding entities operate as a single, unified enterprise for a common business purpose, to wit: owning, controlling and managing rental apartment buildings located in New York City.

18. Defendants and their constituent/affiliated entities share a common website (www.arkarinc.com), and they utilize the trade name "Arkar" to publicly describe their enterprise, including, *inter alia,* designating "Arkar" as the registered managing agent for each of the buildings that Defendants acquire and own through their enterprise.

19. On their website, Defendants state that their "impressive portfolio of properties includes a variety of New York's premiere locations." (http://arkarinc.com/Home_Page.html, accessed on August 31, 2017).

20. Upon information and belief, during relevant time periods, Defendants, as a single, unified enterprise, directly and/or indirectly owned, operated and/or controlled apartment buildings, including, *inter alia*, apartment buildings located at: 1969 Amsterdam Avenue, New York, NY; 1704 Amsterdam Avenue, New York, NY; 504, 520 and 524 West 145th Street, New York, NY; 2025 Seward Avenue, Bronx, NY; 603 Lincoln Avenue, Staten Island, NY; 599 Lincoln Avenue, Staten Island, NY; 331 East Houston Street, New York,

NY; 2722 Eighth Avenue, New York, NY; 680 St. Nicholas Ave, New York, NY; 3671-3673 Broadway, New York, NY; and 1597 York Ave., New York, NY.

21. Although Defendants establish limited liability companies to nominally hold title to each apartment building, the Defendants, as a single real estate enterprise, exercise complete control over each of these title-holding entities and the apartment buildings.

22. Upon information and belief, and at all times herein relevant, Arkar is a corporation organized and existing under the laws of the State of New York. Upon information and belief, Arkar maintains a principal place of business at 1597 York Avenue, New York, NY.

23. Upon information and belief, at times relevant hereto, Seward 2025 was the title holder and owner of the Seward Ave Building, where Plaintiffs were employed.

24. Upon information and belief, Gili Haberberg is an adult natural person who is the head officer (Chief Executive Officer) of Arkar and Seward 2025.

25. Upon information and belief, Gili Haberberg resides in the City, County and State of New York.

26. Defendant Gili Haberberg is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

27. Defendant Gili Haberberg possessed operational control over Arkar and Seward 2025, an ownership interest in these corporations, or controlled significant functions of these corporations. Gili Haberberg's operational control is evidenced, *inter alia*, by: (a) on May 8, 2017, he executed and acknowledged the a by which Seward 2025 conveyed the Seward Ave Building to a purchaser; (b) registration statements filed by Defendants with the New York City Department of Housing Preservation and Development identify Gili Haberberg as officer and/or "head officer" of the defendants' buildings' title-holding entities;

and (c) Gili Haberberg assumed personal financial responsibilities for the Defendants' apartment buildings, including, for example, the mortgage/loan for the Seward Ave Building.

28.     Defendant Gili Haberberg participated in and exercised direct and/or indirect control over the day-to-day operations, including but not limited to personnel decisions and policies and wage practices of Arkar and Seward 2025.  Upon information and belief, Gili Haberberg determined the terms and conditions of Plaintiffs' employment, including their rates of pay and work schedules.

29.     Upon information and belief, defendant Ari Haberberg is an adult natural person who exercised control over the Seward Ave Building and supervised the Plaintiffs.

30.     Upon information and belief, Ari Haberberg resides in the City, County and State of New York.

31.     Defendant Ari Haberberg is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

32.     Upon information and belief, defendant Ari Haberberg exercised hiring and firing authority over employees who worked at apartment buildings owned and controlled by Defendants, and he specifically had authority to hire and fire the Plaintiffs and other employees who worked at the Seward Ave Building.

33.     Defendant Ari Haberberg participated in day-to-day operations of Arkar and Seward 2025, and he was specifically involved in managing and making decisions regarding the schedules and wages of Plaintiffs and other personnel.

34.      Ari Haberberg oversaw and supervised Plaintiffs, and he personally interacted with Plaintiff Montalvo with respect to Montalvo's day-to-date work responsibilities and the tasks that Montalvo was required to perform.

35. Defendants constitute an integrated enterprise, with common management, control, personnel, wage and overtime policies, ownership, and inextricably intertwined operations and functioning.

36. As is a common practice among New York City real estate investors, Defendants structured their real estate enterprise by utilizing a single management company (Arkar) as its public trade name, and holding title to each of the enterprise's apartment buildings through a limited liability company that the enterprise wholly controlled.

37. At all relevant times, defendants Ari Haberberg and Gili Haberberg controlled significant functions of Arkar and Seward 2025, including control over the policies and practices with respect to employment and compensation of Plaintiffs and all similarly situated individuals who performed maintenance work at apartment buildings that the Defendants operated, controlled and/or owned, including the apartment buildings identified in paragraph number 20 hereinabove.

38. Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

39. Defendants subject their employees to the same policies and procedures, in particular policies and procedures relating to the violations alleged in this Complaint.

## CLASS AND COLLECTIVE ALLEGATIONS

40. This action is properly maintainable as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

41. This action is brought on behalf of Plaintiffs, and a class of similarly situated employees (the "FLSA Class") who worked for Defendants as superintendents and building

maintenance workers who are or were employed by Defendants on or after a date that is three years before the filing of this complaint (the "FLSA Class Period").

42.     Plaintiffs and, upon information and belief, potential plaintiffs who may elect to opt-in as part of the collective action are all victims of the Defendants' common policy and/or plan to violate the FLSA and/or NYLL by failing to provide overtime wages, at the rate of one and one-half times the regular rate of pay, for all time worked in excess of 40 hours in any given week pursuant to 29 U.S.C. § 207; making illegal deductions from wages; and failing to provide legally-mandated wage statements and notices.  Plaintiffs and other members of the FLSA Class had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies and procedures of willfully failing and refusing to pay them required overtime pay.

43.     The questions of law and fact common to the putative class and collective predominate over questions affecting only individual members.  These questions include but are not limited to (1) whether Defendants employed Plaintiffs and similarly situated individuals within the meaning of the FLSA and NYLL; (2) whether the Defendants failed to keep accurate time records for all hours worked by Plaintiffs and similarly situated employees; (3) whether Defendants failed to pay Plaintiffs and similarly situated employees all earned wages; (4)  whether the Defendants failed to pay overtime wages at the rate of one and one half times the regular rate of pay for all hours worked in excess of 40 hours in any given week; (5) whether Defendants failed to pay wages and/or made illegal deductions in violation of the New York Labor Law; and (6) whether Defendants failed to provide mandatory Wage Theft Notices in violation of the New York Labor Law.

## **PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS**

44. Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

45. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs within the meaning of the FLSA.

46. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs within the meaning of the NYLL, §§ 2 and 651.

47. Upon information and belief, at all relevant times, Defendants have had annual gross revenues in excess of $500,000.00. Upon information and belief, the Seward Ave Building, alone, has an annual net rental income of approximately $1.65 million.

**(a) Dorian Montalvo**

48. Montalvo worked at the Seward Ave Building for approximately two years, from in or about April 2015, until on or about May 17, 2017. Montalvo performed maintenance work, interacted with building residents, and performed countless other day-to-day building-related tasks in his capacity as the Seward Ave Building's superintendent.

49. Montalvo regularly handled goods in interstate commerce that were produced outside the State of New York, such as cleaning solvents, brooms, and other materials and supplies.

50. Montalvo's job responsibilities touched upon virtually every aspect of physically maintaining and running the eight-floor Seward Ave Building, which has approximately 179 residential rental apartments.

51. In a letter dated May 11, 2017, Montalvo's supervisor, Ari Haberberg, praised Montalvo, writing that Montalvo "has a gifted hand and intimate knowledge of all facets of

9

physical repair as well as building maintenance and his curiosity and intelligence finds him quickly mastering the rare thing he does not yet know how to fix."

52. During the approximately two years during which Montalvo was employed by Defendants, Montalvo worked seven days per week, around the clock, to refurbish and upgrade the Seward Ave Building's systems and components, including but not limited to its roof. Montalvo installed new kitchens in units when tenants moved out, tiled apartments, managed the boiler, interacted with police, cleaned elevator pits, and worked overnight during snowstorms to shovel snow.

53. Defendants paid Montalvo a flat semi-monthly wage of $670.00, regardless of the number of days or hours that he worked during a particular week.

54. Montalvo was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

55. Montalvo regularly worked in excess of forty (40) hours per workweek and did not receive overtime compensation for hours worked in excess of forty per week.

56. Montalvo worked, on average, approximately 70 – 80 hours over the course of a typical work week during his employment with Defendants.

57. Because the Seward Ave Building had long suffered from extreme social and behavioral problems involving residents, Montalvo had to remain available to communicate with police and other emergency responders who were routinely called to Seward Ave Building to address disturbances involving tenants. In his letter dated May 11, 2017, defendant Ari Haberberg specifically praised Montalvo for his superb handling of tenant-related social challenges, writing: "It should not go unmentioned that Mr. Montalvo's building held nearly 160 units, with many troublesome tenants, all of whom he handled with

a strong deft hand."  This aspect of Montalvo's job required him to be on call at all hours of the day and night.

58. Montalvo was required to remain on-call at all hours, and his cellular telephone number was made widely available so that he could be contacted in the event of emergencies and/or repair issues, even at night and on weekends.

59. During overnight hours, Montalvo had to remain on-call to deal help remove tenants and visitors who were trapped in elevators that would not open.  These incidents (referred to as "elevator entrapments") took place approximately two to three times per month.

60. Defendants failed to provide Montalvo with paystubs that accurately reflected the total amount of hours worked or provide any breakdown regarding the hours worked and pay received.  Upon information and belief, Defendants similarly failed to provide putative class members with accurate paystubs.

61. Defendants failed to provide Montalvo with the mandatory New York Labor Law Wage Theft Notice at the start of his employment or at any time thereafter.

62. Defendants required Montalvo to purchase "tools of the trade" with his own funds, including a drill and various other types of work tools.

**(b) Gilberto Pamias**

63. Pamias began working for Defendants as a handyman at the Seward Ave Building beginning in or about May 2015 until on or about May 17, 2017.

64. Pamias' routine responsibilities included, among other things, plumbing, painting, lock repair, window repair, assisting with electrical work; assisting with maintenance of the boiler; bathroom and kitchen repairs; cleaning, minor repairs, polishing wood floors, and countless other tasks.

11

65. Pamias was particularly involved in interacting with tenants of the Seward Ave Building, and he regularly worked evenings specifically for this purpose. In a letter dated May 11, 2017, defendant Ari Haberberg specifically praised Pamias for his skilled communications with tenants. Haberberg wrote, "Gilberto is a wonderful communicator. His work with us involved dealing with many difficult tenants, all of whom were eased by his presence and demeanor."

66. Pamias worked an average of forty-five hours per week. However, when special projects arose, Pamias would work as much as sixty hours per week. For example, Pamias worked on Saturdays to assist with the renovations of apartments 2J and 5C in the Seward Ave Building. These apartment renovations involved painting walls, replacing toilets and pipes, and gutting and replacing kitchens.

67. Pamias was paid by check without any paystub.

68. With the full knowledge Ari Haberberg, Pamias was frequently called upon to work evenings and weekends, but he was never paid any overtime compensation for this work.

69. Defendants did not utilize any time tracking device or system to keep track of the hours that Pamias worked. Instead, Defendants would pay Pamias $440.00 per week ($11.00 per hour x 40 hours) with no compensation for the hours that Pamias worked beyond the first forty hours. In effect, Pamias was paid a flat weekly rate.

70. Defendants' pay practices resulted in Pamias not receiving payment for all of his hours worked, resulting in Pamias' effective rate of pay falling below the required New York State minimum wage rate.

   **(c) Giovanne Pagan**

71. Pagan began working for Defendants as a handyman at the Seward Ave Building beginning in or about June 2015 until on or about April 28, 2017.

12

72.    Pagan's routine responsibilities included, among other things, plumbing, painting, lock repair, window repair, assisting with electrical work; assisting with maintenance of the boiler; bathroom and kitchen repairs; cleaning, minor repairs, polishing wood floors, and countless other tasks.

73.    Pagan worked an average of forty-five hours per week.  However, when special projects arose, Pagan would work as much as sixty hours per week.  These special projects would involve renovations of apartments, including the renovation projects that are described in paragraph 66 hereinabove.

74.    Pagan was paid by check without any paystub.

75.    With the full knowledge Ari Haberberg, Pagan was called upon to work evenings and weekends, but he was never paid any overtime compensation for this work.

76.    Defendants did not utilize any time tracking device or system to keep track of the hours that Pagan worked.  Instead, Defendants would pay Pagan $450.00 per week ($11.25 per hour x 40 hours) with no compensation for the hours that Pagan worked beyond the first forty hours.  Thus, Pagan was effectively paid a flat rate.

**(d) Leonard Crisci III**

77.    Crisci began working for Defendants as a handyman at the Seward Ave Building beginning on or about May 1, 2015 until approximately May 2017.

78.    Crisci's routine responsibilities included, among other things, plumbing, painting, lock repair, window repair, assisting with electrical work; assisting with maintenance of the boiler; bathroom and kitchen repairs; cleaning, minor repairs, polishing wood floors, and countless other maintenance and repair tasks.  Crisci was particularly skilled and relief upon for performing plumbing-related work.

79.    Crisci worked an average of forty-five hours per week.  However, when special projects arose, Crisci would work as much as sixty hours per week.  These special

13

projects would involve renovations of apartments, including the renovation projects that are described in paragraph 66 hereinabove.

80. Crisci was paid by check without any paystub.

81. With the full knowledge Ari Haberberg, Crisci was called upon to work evenings and weekends, but he was never paid any overtime compensation for this work.

82. Defendants did not utilize any time tracking device or system to keep track of the hours that Pagan worked. Instead, Defendants would pay Crisci $520.00 per week ($13.00 per hour x 40 hours) with no compensation for the hours that Crisci worked beyond the first forty hours. Thus, Crisci was effectively paid the same flat rate of pay, regardless of the extensive overtime hours that he worked.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***
**(On Behalf of All Plaintiffs and the FLSA Class)**

83. Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

84. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d). Defendants employed Plaintiffs as maintenance workers, employment positions which engaged the employees in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1). At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

85. In the performance of their duties for Defendants, Plaintiffs worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

86. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

87. As a result of the foregoing, Plaintiffs seek judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiffs for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Solely on Behalf of Plaintiffs Pamias, Pagan and Crisci)**

88. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

89. The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiffs Pamias, Pagan and Crisci.

90. Defendants willfully failed to pay Plaintiffs for all of the hours that they worked in excess of 40 hours in a workweek.

91. Defendants willfully failed to pay Plaintiffs premium overtime at a rate of time and one-half their regular hourly rate for all hours worked in excess of 40 hours per workweek.

92. Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs.

93. As a result of Defendants' knowing or intentional failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per workweek, Plaintiffs Pamias, Pagan and Crisci are entitled to compensation unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### Illegal Deductions, New York Labor Law, Article 19 § 193
### 12 N.Y.C.R.R. § 2.10(a).
### (On Behalf of All Plaintiffs)

94. Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

95. In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiffs, including *inter alia*, deductions by requiring them to spend their own money on work-related expenses, particularly tools of the trade, such as drills, saws, and plumbing snakes, that Plaintiffs were required to purchase

## AS AND FOR A FOURTH CAUSE OF ACTION
### Wage Statement Violations

96. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

97. Defendants willfully failed to provide Plaintiffs with written notices, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such information as required by NYLL § 195(3) and/or 198(1-b)

98. Plaintiffs are each entitled to recover wage-notice statutory damages of $50 dollars "for each work *day* that the violations occurred or continue to occur," not to exceed $5,000.  2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198 (1-b).

99. Plaintiffs are each entitled to recover statutory damages for Defendants' failure to provide paystubs that accurately set forth the basis of Plaintiffs' pay, the correct name and identity of the employer, and other legally-mandated information.

## RELIEF SOUGHT

**WHEREFORE,** the Plaintiffs respectfully request that the Court grant the following relief:

1. That the Court declare, adjudge and decree that Defendants violated the overtime provisions of the FLSA as to Plaintiffs and putative class members and the overtime provisions of the NYLL as to Plaintiffs;

2. Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action.

3. That the Court make an award to Plaintiffs of damages and/or restitution for the amount of unpaid compensation, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial, as well as liquidated damages in an amount equal to 100% of their damages.

4. That the Court make an award to the reimbursement for all unlawful deductions, including costs that Plaintiffs incurred to purchase their own tools of the trade.

5. Declaring that Defendants violated section 191 of the NYLL.

6. An award of statutory damages for Defendants' failure to provide Plaintiffs with statements and information required by NYLL § 198(1-b) and (1-d) and NYLL § 195(3).

7. For all other Orders, findings and determinations identified and sought in this Complaint;

8. For prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate, to the fullest extent allowed by law;

9. For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law;

10. Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after the expiration of the time to

appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent (15%) pursuant to NYLL § 198(4); and

11.     Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated:  September 1, 2017                    **RAPAPORT LAW FIRM, PLLC**

/s/
By:     _____
Marc A. Rapaport, Esq.
Attorney for Plaintiffs
Rapaport Law Firm, PLLC
One Penn Plaza, Suite 2430
New York, New York 10119
Ph: (212) 382-1600
mrapaport@rapaportlaw.com